

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
## NO. PD-1102-20
---

### EX PARTE KEVIN DALE SHEFFIELD, Appellant

---
### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### JOHNSON COUNTY
---

WALKER, J., delivered the opinion of the Court in which KELLER, P.J., and HERVEY, RICHARDSON, NEWELL, KEEL, SLAUGHTER, and MCCLURE, JJ., joined. YEARY, J., concurred.

## O P I N I O N

Many claims are not cognizable in pretrial habeas corpus. For example, a claim that a statute is unconstitutional as-applied is generally not cognizable. However, in *Ex parte Perry*, we allowed an as-applied challenge in pretrial habeas, despite the general rule. *Ex parte Perry*, 483 S.W.3d 884, 895 (Tex. Crim. App. 2016). Speedy trial claims are also not cognizable, but the court of appeals in this case determined that the *Perry* rule applied to Appellant Kevin Dale Sheffield's speedy trial claim. We hold that the *Perry* rule does not apply to speedy trial claims because pretrial habeas corpus litigation would not vindicate the speedy trial right and would effectively undermine that right instead. Vindication of the speedy trial right must be had through a motion to dismiss followed by

appeal after trial if the motion is wrongly denied. If trial and appeal are indefinitely postponed, mandamus, not pretrial habeas, is available. The judgment of the court of appeals is reversed.

## I — Background

With bond set at $100,000, Appellant has been in custody since August 5, 2019. While in custody, Appellant filed several *pro se* documents with the trial court even though he had appointed counsel. In his first *pro se* letter, filed August 22, Appellant requested an examining trial and a personal recognizance (PR) bond until the examining trial could take place. Appellant also filed a *pro se* motion, file-stamped September 19, for a speedy trial and for discharge under article 28.061.[1] Appellant followed the motion with another *pro se* letter, filed September 20, reasserting his requests for a speedy trial, a speedy examining trial, and a PR bond until the examining trial.

On September 26, the grand jury returned a five-count indictment alleging possession, with intent to deliver, first degree felony amounts of methamphetamine and heroin;[2] possession of a first degree felony amount of cocaine;[3] evading arrest in a vehicle;[4] and unlawful possession of a firearm by a convicted felon.[5]

On September 30, a brief status hearing was held. The trial court appointed new counsel for Appellant, and, in order to work his new attorney, Appellant withdrew his motion for speedy trial.

---

[1] Article 28.061 provides that if a motion to set aside a charging instrument for failure to provide a speedy trial is sustained, the court is required to discharge the defendant. TEX. CODE CRIM. PROC. Ann. art. 28.061.

[2] *See* TEX. HEALTH & SAFETY CODE Ann. §§ 481.112(a), (d); 481.102(2), (6).

[3] *See* TEX. HEALTH & SAFETY CODE Ann. §§ 481.115(a), (d); 481.102(3)(D).

[4] *See* TEX. PENAL CODE Ann. § 38.04(a), (b)(1)(B).

[5] *See* TEX. PENAL CODE Ann. § 46.04(a)(1).

On that same date, the trial court entered its pre-trial scheduling order, setting jury trial for January 23, 2020, which was then filed with the district clerk on October 8.

In January, although represented by counsel, Appellant sent a *pro se* letter, filed January 7, seeking a hearing on a motion for discovery and a motion for speedy trial. On January 9, a status hearing was held, and Appellant testified that, after discussing his case with counsel, he no longer wished to pursue the motion for speedy trial. On the motion for discovery, Appellant explained that he was simply trying to get whatever information he could regarding his case. He was admonished that as the defendant he was not allowed to have copies of certain items of discovery,[6] and he was instructed to allow counsel to do the lawyering for him.

On January 24, a hearing was held on Appellant's motion to suppress, in which the officers who encountered and arrested Appellant testified, and Appellant argued that he was unlawfully detained and that his pickup truck was illegally seized and searched. The trial court denied Appellant's motion.

Proceedings in Appellant's case came to a halt in the spring of 2020, as the trial court and all trial courts in Texas shut down in response to the emerging COVID-19 pandemic. Nevertheless, Appellant sought to keep his case moving forward, and Appellant sent a *pro se* letter, filed May 6, challenging the arrest, the indictment, and the seizure and search of his pickup truck. Appellant also repeated his request for a PR bond.

On May 12, a hearing was held, via teleconference, in which the trial court allowed Appellant to represent himself but keep standby counsel. On Appellant's requests for discovery, the trial court explained that discovery would be:

---

[6] *See* TEX. CODE CRIM. PROC. Ann. art. 39.14(f).

difficult because you're going to — we're going to have to have to bring you over to the Guinn building at some point and you can sit down and look at the file. In an open file policy, you can look at it and take notes, but you can't photocopy or take things home with you.

. . .

Or to the jail with you. So that's kind of the way attorneys have to work, so —

. . .

— we'll have to make arrangements. The Office of Court Administration says that after June 1st if we have an approved plan in place, we can start letting people come back in the building. Our county health official has to sign off on that. He's not comfortable until July 1st, but I'm working on a plan to try to convince him that after June 15th or sometime in earlier June that he would let limited people, you know, come back in here.

So if that's the case, then you have to come over here and put a mask on, put gloves on and go through the file, and [standby counsel] can sit with you and go through the file and just make your notes and things like that. And when you're done, you go back to jail. And then we can have a hearing on what you want.

Appellant, now representing himself, mailed a *pro se* motion, filed May 18, seeking release under article 17.151.[7] On June 4, the trial court held a teleconference hearing on the motion. The State indicated that it had been ready for trial since the day Appellant was indicted. The prosecutor added:

[T]he Governor in the State of Texas issued a disaster declaration. I believe that is declaration of March 13th, 2020 which states certain portions are suspended, particularly the release on personal recognizance bond, the automatic release on P.R. bond because the State is not ready for trial.[8] At this particular point because of the

---

[7] Article 17.151 provides that a defendant who is charged with a felony and who is detained in jail pending trial must be released on personal bond or by reducing the amount of bail required, if the State is not ready for trial within 90 from the beginning of his detention. TEX. CODE CRIM. PROC. Ann. art. 17.151 § 1(1).

[8] While the Governor's initial disaster declaration was issued on March 13, 2020, the Governor's suspension of article 17.151's personal bond provision occurred in a later executive order on March 29, 2020. The Governor of the State of Tex., Proclamation 41-3720, 45 Tex. Reg. 2094, 2094 (2020); The Governor of the State of Tex., Exec. Ord. No. GA-13, 45 Tex. Reg. 2368,

COVID-19 disaster declaration and other issues related to that, it's my understanding we are not in a position to be able to conduct a jury trial, so the State would oppose Mr. Sheffield's motion and ask that the Court would leave — leave the $100,000 bond in place.

The trial court denied Appellant's article 17.151 motion, explaining:

The problem is that the State's ready but the Court is not allowed to conduct a jury trial because the Office of Court Administration has instructed me that I'm not allowed to conduct any jury trials until they let me know. They don't think that there will be any jury trials until after August 15th, and that even then, there may not be any jury trials until next year. On top of the Office of Court Administration, the Chief Justice [sic] of the Court of Criminal Appeals and the Chief Justice of the Texas Supreme Court have instructed the courts, including me, that we are not to have live, in-person hearings unless it's absolutely necessary and there's no other way to have the hearing, and that we are not to have jury trials. We're not even to convene a Grand Jury selection hearing, so they've extended the previous Grand Jury six months so we don't have to have 140 people in here to pick a new Grand Jury. So, I would like to have a jury trial. I would be more than willing to have a jury trial, but the Court is being prevented from having any trials under direct direction and instruction from higher authority.

So I am going to deny your motion.

If you wish to appeal the motion, you may do so to the Waco Court of Appeals and let them figure out how to handle it. But it's not me, it's not [the prosecutor] and his office that are not ready to go forward with the trial. It's the Office of Court Administration and the higher courts in Texas that have decided that until they can get a handle on this virus problem that we are not to go forward with trials, so that's where we are.

. . .

I would love to have a trial here. I would love to have a Jury in here and not have this computer program, but that's just not the reality that I'm in right now and neither are you[.]

A week later, Appellant sent a *pro se* letter, filed June 15, reasserting his request for a speedy trial, but "It should be a <u>Judge Trial</u>" instead of a jury trial. He added: "The state said that they are ready

2369 (2020).

for trial I say that I am ready for trial. After pre-trial motions are finished we should proceed to trial. As soon as is possible." Appellant's letter also purported to withdraw his plea of Not Guilty and requested a visit to the courthouse for discovery purposes.

On June 29, Appellant, through standby counsel, filed an application for writ of habeas corpus, again seeking release on personal bond under article 17.151 because more than ninety days had passed and, because of COVID-19 related restrictions, the State was not and could not be ready for trial. In the alternative, Appellant requested that "[i]f such request is denied, Movant is entitled under the law to a speedy trial, which he re-urges his request for." The trial court held a teleconference hearing on the writ application on the next day, June 30. At that hearing, standby counsel spoke for Appellant and urged a speedy trial or release under article 17.151, because although he was ready and wanted to go to trial, a trial could not occur due to COVID-19 and the Texas Supreme Court's emergency orders; thus, article 17.151 required his release on personal bond. The prosecutor responded that the State was ready to proceed to trial, but:

> It's emergency orders that have been handed down by the Office of Court Administration, the Court of Criminal Appeals, the Supreme Court of Texas that have placed this roadblock in our path to — to getting this case resolved at this point.

> However, with regard to Article 17.151 of the Code of Criminal Procedure, I believe Governor Abbott issued — make sure I'm quoting this correctly — It says, "Emergency order and Executive Order declaring a disaster". One of the relevant portions of it deal with the suspending of Article 17.151 for the purposes of releasing someone on a PR bond because of the nature of the disaster that is ongoing.

The trial court denied relief, noting that it would not entertain a personal bond for the types of offenses that Appellant was charged with, and:

> stating again that the Court is ready for trial. I understand the State to be ready for trial and the Defense is ready for trial, but I am prohibited from calling a jury in for a jury trial at this point by the Office of Court Administration and respectfully I must

follow their instructions.

Appellant appealed the trial court's denial of habeas relief, arguing that the trial court erred in denying either personal bond or bail reduction, which he claimed were required under article 17.151. *Ex parte Sheffield*, 611 S.W.3d 630, 633 (Tex. App.—Amarillo 2020).[9] He also argued that if he could not receive personal bond or reduced bail, then he was entitled to a speedy trial, yet the indefinite delay in jury trials caused by the COVID-19 related emergency orders violated his right to a speedy trial. *Id.* at 632, 634. The court of appeals disagreed with Appellant on the "bail/bond issues," finding that although a jury trial could not be held, there was no dispute that, at the June 4 hearing, the State had represented it was ready for trial from the date of Appellant's indictment, which was within ninety days of his incarceration, and thus article 17.151 was inapplicable. *Id.* at 633–34.[10]

Regarding the speedy trial issue, the court of appeals explained that the constitutional right to a speedy trial could not be indefinitely suspended by the state of disaster alone. *Id.* at 635. Because the Texas Supreme Court's emergency orders left pathways open to the possibility of a trial,[11] the

---

[9] Regarding the Governor's disaster declaration stating that article 17.151 was suspended, Appellant argued that the suspension of the statute was unconstitutional.

[10] The propriety of the court of appeals's decision on the article 17.151 issue is not before this Court, and we mention it no further.

[11] Namely, the court of appeals pointed to language in the Texas Supreme Court's Twenty-Second Emergency Order, that trial courts forgo holding trials "except as authorized by this Order." *Sheffield*, 611 S.W.3d at 635 (quoting Twenty-Second Emergency Order Regarding the COVID-19 State of Disaster, 609 S.W.3d 129, 130 (Tex. 2020)). The court of appeals found "[o]ne such authorization provided that the Office of Court Administration 'in coordination with the Regional Presiding Judges and the local administrative judges, should assist trial courts in conducting a limited number of jury proceedings prior to October 1.'" *Id.* (quoting Twenty-Second Emergency Order, 609 S.W.3d at 130). And the order included various guidelines by which trials should be conducted, including a requirement that the trial judge request permission to conduct trials. *Id.*

trial court thus erred in indefinitely foregoing proceedings instead of seeking to accommodate the right within the confines of the order. *Id.* at 635. Accordingly, the court of appeals reversed the trial court's denial of Appellant's pretrial habeas application and remanded to the trial court. *Id.* at 636.

The State Prosecuting Attorney's Office (SPA) filed a motion for rehearing, citing authority that speedy trial claims are not permitted in pretrial habeas corpus because allowing such claims would improperly make them subject to interlocutory appeal. *Id.* at 636 (order on mot. for reh'g). The court of appeals distinguished the SPA's cited authorities because the applicants in those cases were seeking dismissal, whereas Appellant was seeking a speedy trial. *Id.* The court of appeals explained that it believed Appellant's speedy trial issue was cognizable in pretrial habeas corpus under the rule of *Ex parte Perry*. *Id.* at 637 (discussing *Perry*, 483 S.W.3d 884). Accordingly, the court of appeals denied the State's motion for rehearing. *Id.*

The SPA filed its petition for discretionary review on November 20. While the petition was pending at this Court, the heroin-related count and the cocaine-related count were waived by the State, and Appellant's case proceeded to trial. Representing himself, Appellant was convicted by the jury and received sentences of sixty years for the methamphetamine-related count, five years on the evading arrest count, and ten years for the firearm count.[12]

Meanwhile, on the SPA's petition for discretionary review, we granted two of the grounds

---

(citing Twenty-Second Emergency Order, 609 S.W.3d at 130).

[12] We note that Appellant has appealed the conviction, raising issues related to the trial court's denial of his motion to suppress. The appeal is currently pending at the Tenth Court of Appeals in Waco, Cause Number 10-21-00109-CR.

raised:[13]

>2. Are speedy trial claims cognizable on pretrial habeas if the applicant asks for a speedy trial rather than a dismissal?

>3. Did the court of appeals improperly reverse the trial court's ruling for what the trial court said instead of what she did?

Additionally, we granted the following ground on our own motion:

>Did the trial court have jurisdiction to hold a trial while the State's petition for discretionary review was pending in this Court?

### II — Cognizability in Pretrial Habeas and *Ex parte Perry*

We explained our general approach in *Ex parte Weise*:

>In determining whether an issue is cognizable on habeas, we have considered a variety of factors. We have looked at whether the alleged defect would bring into question the trial court's power to proceed. Along these same lines, we have found that a pretrial writ application is not appropriate when resolution of the question presented, even if resolved in favor of the applicant, would not result in immediate release. We have held that an applicant may use pretrial writs to assert his or her constitutional protections with respect to double jeopardy and bail. *We reasoned that these protections would be effectively undermined if these issues were not cognizable. . . .* Pretrial habeas should be reserved for situations in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review.

*Ex parte Weise*, 55 S.W.3d 617, 619–20 (Tex. Crim. App. 2001) (emphasis added). Thus, pretrial habeas corpus is available "only in very limited circumstances." *Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005). For example, we allow claims that prosecution would violate the right against double jeopardy. *Ex parte Robinson*, 641 S.W.2d 552, 555 (Tex. Crim. App. [Panel Op.] 1982) (holding that double jeopardy claims "must be reviewable" prior to trial). Claims that statutes

---

[13] We refused review of the SPA's first issue, which asked:

>(1) Did the court of appeals err to open a new a venue for pretrial habeas when that claim was not raised before the habeas judge?

are facially unconstitutional are also cognizable. *See, e.g.*, *Ex parte Thompson*, 442 S.W.3d 325, 330 (Tex. Crim. App. 2014) (reviewing facial constitutionality of the "improper photography or visual recording" statute in pretrial habeas).

Other issues, like as-applied challenges, are generally not cognizable. *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) ("Pretrial habeas . . . may not be used to advance an 'as-applied' challenge."); *see e.g.*, *Weise*, 55 S.W.3d at 620–21 (finding applicant's claim not cognizable in pretrial habeas because the claim was actually an as-applied, not facial, constitutionality challenge). But the categorical exclusion of as-applied claims is not absolute.

In *Perry*, the defendant (former Governor Rick Perry) was charged with abuse of official capacity by misusing funds appropriated by the Legislature to fund the Public Integrity Unit of the Travis County District Attorney's Office (specifically by vetoing the funds), with the intent to harm the Travis County District Attorney and the Public Integrity Unit. *Perry*, 483 S.W.3d at 889–91.[14] The defendant filed a pretrial application for habeas corpus, claiming that the abuse of official capacity prosecution was unconstitutional as applied to his veto because the prosecution violated the Separation of Powers Provision of the Texas Constitution. *Id.* at 890.

To address the question of whether Separation of Powers was violated, we first had to answer whether the as-applied challenge could be raised in a pretrial habeas application followed by interlocutory appeal. *Id.* at 888. The plurality opinion by Presiding Judge Keller and joined by two judges pointed to *Weise* and acknowledged that:

> Although we have said that as-applied challenges are not cognizable before trial, we

---

[14]  In a separate count, he was charged with coercion of a public servant, by threatening to veto the funding for the Public Integrity Unit unless the Travis County District Attorney resigned from office. *Perry*, 483 S.W.3d at 889–90.

allow certain types of claims to be raised by pretrial habeas because the rights underlying those claims would be effectively undermined if not vindicated before trial. Within this category of rights that would be effectively undermined if not vindicated pretrial, we have, so far, recognized the constitutional protections involving double jeopardy and bail. . . . [C]ertain types of as-applied claims may be raised by pretrial habeas because the particular constitutional right at issue in the as-applied challenge is the type that would be effectively undermined if not vindicated prior to trial.

*Id.* at 895–96 (plurality op.) (citing *Weise*, 55 S.W.3d at 619). After reviewing how the "effectively undermined if not vindicated prior to trial rationale" applied to double jeopardy, the Speech and Debate Clause, and even separation of powers cases at the federal circuit court level, the plurality concluded that the defendant's as-applied separation of powers claim was cognizable in pretrial habeas. *Id.* at 896–898 (discussing *Abney v. United States*, 431 U.S. 651 (1977), *Helstoski v. Meanor*, 442 U.S. 500 (1979), and *United States v. Myers*, 635 F.2d 932 (2d Cir. 1980)) (internal quotation marks omitted).

In a concurring opinion joined by two other judges, Judge Newell agreed that the defendant's as-applied separation of powers claim was cognizable in pretrial habeas, but he would have found cognizability under the reasoning of *Ex parte Boetscher*, which had allowed an equal protection claim in pretrial habeas because the constitutional violation was apparent from the face of the pleadings. *Id.* at 923 & n.1 (Newell, J., concurring) (discussing *Ex parte Boetscher*, 812 S.W.2d 600, 603 (Tex. Crim. App. 1991)). While Judge Newell believed that "simply addressing the constitutional claim because the violation is apparent from the pleadings resolves the matter much more cleanly," he remarked that:

Presiding Judge Keller *correctly* observes that this claim would also be "cognizable" on a pretrial writ of habeas corpus to vindicate a constitutional right that would be effectively undermined if a defendant could only receive relief from that constitutional violation after trial.

*Id.* at 924 (emphasis added).

Thus, between Presiding Judge Keller's three-judge, plurality opinion, and the three-judge, concurring opinion by Judge Newell, a majority of the Court reaffirmed that certain types of claims may be raised by pretrial habeas because the rights underlying those claims would be effectively undermined if not vindicated before trial and agreed that this *Weise* factor lent cognizability to the as-applied challenge. *Id.* at 895 (plurality op.); *id.* at 924 (Newell, J., concurring). For the purposes of our discussion today, we will refer to this *Weise* factor (or perhaps principle),[15] as "the *Perry* rule."

### III — The *Perry* Rule Does Not Apply to Speedy Trial

We now turn to the SPA's second ground for review, which asks whether speedy trial claims are cognizable in pretrial habeas corpus when an applicant wants a trial, instead of a dismissal. "[W]e have held that an applicant may not use a pretrial writ to assert his or her constitutional rights to a speedy trial[.]" *Weise*, 55 S.W.3d at 620; *see Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010); *Ex parte Delbert*, 582 S.W.2d 145, 146 (Tex. Crim. App. [Panel Op.] 1979); *Ex parte Jones*, 449 S.W.2d 59, 60 (Tex. Crim. App. 1970).

However, the court of appeals, in its opinion on the order denying rehearing, distinguished that prior case law because unlike Appellant, the defendants in those cases were seeking dismissal and not a speedy trial. *Sheffield*, 611 S.W.3d at 636 (order on mot. for reh'g). The court of appeals explained its belief that Appellant's claim was cognizable under the *Perry* rule. *Id.* at 637. As the court of appeals saw it:

> Unless addressed before trial, the denial of his entitlement to a speedy disposition

---

[15] *See id.* at 922 (Alcala, J., concurring) ("I would further clarify that these are not 'factors' at all. Rather, there are certain principles that must underlie any decision to grant pretrial habeas relief[.]").

> cannot be vindicated when the trial judge indefinitely forgoes trial. His claim entails a substantive right to a timely disposition of the charges against him, which right is being effectively undermined through administrative fiat. These circumstances satisfy the very criteria used in *Perry* to justify deviation from historical limitations imposed on the availability of habeas relief.

*Id.*

The SPA argues that pretrial habeas corpus litigation, including interlocutory appellate review, thwarts the purpose of the speedy trial right. Appellant, for his part, copies the court of appeals's discussion quoted above.

Even if we assume that the trial judge was indefinitely forgoing trial due to administrative fiat, we disagree with the court of appeals that such circumstances satisfy the *Perry* rule because the speedy trial right would not be effectively undermined if not vindicated before trial. Instead, pretrial habeas litigation with interlocutory appeal would have the opposite effect. In normal circumstances, such litigation would inject appellate delay and undermine the speedy trial right, and where trial is indefinitely postponed, pretrial habeas litigation would not vindicate the speedy trial right in any event.

We take guidance from *United States v. MacDonald*, in which the United States Supreme Court considered whether a defendant in federal district court could appeal, before trial, the denial of a motion to dismiss for violation of the right to speedy trial. *United States v. MacDonald*, 435 U.S. 850, 850 (1978). Concluding that speedy trial claims are not appealable before trial, the Supreme Court explained its view that the speedy trial right would not be vindicated by pretrial interlocutory appeal:

> There perhaps is some superficial attraction in the argument that the right to a speedy trial . . . must be vindicated before trial in order to insure that no nonspeedy trial is ever held. Both doctrinally and pragmatically, however, this argument fails. Unlike

> the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial. If the factors outlined in *Barker v. Wingo* . . . combine to deprive an accused of his right to a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered.

*Id.* at 860–61. We agree, and affording speedy trial claims cognizability in pretrial habeas would not vindicate, under *Perry*, the speedy trial right.

Furthermore, the *Perry* rule was concerned with whether regular appeal—in other words, postponing relief until after trial—would effectively undermine the right, such that vindication would have to come before trial. *Perry*, 483 S.W.3d at 895–96. For example, with the right against double jeopardy, if appellate review were postponed until after the second trial, the defendant would necessarily have to suffer through that trial, and his right against being tried twice would be irrevocably violated. *Id.* at 896 (discussing *Abney*, 431 U.S. at 660–62); *see also MacDonald*, 435 U.S. at 860 ("The double jeopardy claim in *Abney* . . . involved an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial."). Even if he were to prevail on appeal, his exposure to double jeopardy could not be undone—the right would be undermined.

But with the right to a speedy trial, postponing appellate review until after trial would actually serve the speedy trial interest because it brings the defendant to trial sooner than pretrial habeas and interlocutory appeal would. This is especially so if the State and the trial court become ready for trial while the case is on appeal.

Returning to *MacDonald*, the Supreme Court's opinion was clear that pretrial interlocutory

appeal would have the unintended consequence of undermining the right to a speedy trial. The Supreme Court noted that "[f]ulfillment of [the Sixth Amendment guarantee to a speedy trial] would be impossible if every pretrial order were appealable." *MacDonald*, 435 U.S. at 861. Instead, "[a]llowing an exception to the rule against pretrial appeals in criminal cases for speedy trial claims would threaten precisely the values manifested in the Speedy Trial Clause." *Id.* at 862. "And some assertions of delay-caused prejudice would become self-fulfilling prophecies during the period necessary for appeal." *Id.* The Supreme Court concluded that pretrial delay would be exacerbated by allowing a defendant to obtain interlocutory appeal. *Id.* at 863.

We agree. Allowing a defendant to litigate a speedy trial claim in pretrial habeas corpus would inject pretrial appellate delay, and "pretrial appellate delay can become especially long if the case is bounced back and forth between this Court and a court of appeals." *Doster*, 303 S.W.3d at 726. "[B]eing stuck in 'appellate orbit'", *id.* at 727, would not honor the speedy trial right. Cognizability in pretrial habeas effectively undermines the right to a speedy trial, and, instead of vindicating the right, pretrial habeas would frustrate the right.

What would vindicate the speedy trial right? *Barker v. Wingo* was unequivocal: "the only possible remedy" for a violation of the speedy trial right is the "unsatisfactorily severe remedy of dismissal." *Barker v. Wingo*, 407 U.S. 514, 522 (1972). If a defendant believes his right to a speedy trial has been violated, he should file a motion to dismiss for that very reason,[16] followed by appeal after trial if that motion is wrongly denied.

However, if the trial court were to indefinitely forego trial, there would never be a judgment

---

[16] As recounted in Part I of our opinion, the record shows that Appellant filed several *pro se* documents and motions asserting his right to a speedy trial and seeking dismissal for the failure to provide one.

of conviction, and the trial court's ruling on the motion to dismiss would never see appellate review. A defendant in such a case would have no remedy by appeal after trial. Would pretrial habeas be an appropriate remedy to vindicate the speedy trial right then? *See Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978) (habeas is an extraordinary writ and is not available if there is an adequate remedy at law); *Ex parte Beck*, 541 S.W.3d 846, 852 (Tex. Crim. App. 2017).

No, because mandamus—not habeas—is available to compel a trial. In *Chapman v. Evans*, the defendant sought a writ of mandamus to compel the trial court to either set the case for trial or dismiss the indictment for violation of his right to a speedy trial. *Chapman v. Evans*, 744 S.W.2d 133, 135 (Tex. Crim. App. 1988). Despite his assertion of the right to a speedy trial, nothing had been done to honor that right. *Id.* at 137–38. After weighing the *Barker v. Wingo* factors, we conditionally granted mandamus relief, assuming that within thirty days of our opinion the trial court would set the case for trial. *Id.* at 138.

Similarly, the United States Supreme Court has indicated the appropriateness of mandamus in the face of interminable delay. In *Smith v. Hooey*, the defendant, who was incarcerated in federal prison in Kansas, had Texas state charges pending against him for over six years, yet the State took no steps to bring him to trial despite his repeated requests for a speedy trial. *Smith v. Hooey*, 393 U.S. 374, 375 (1969). When he finally filed a motion to dismiss for want of prosecution, no action was taken on the motion either. *Id.* He filed a petition for writ of mandamus, which was denied by the Texas Supreme Court, believing that because he was confined in a federal prison, the State's duty to afford him a speedy trial was absolved. *Id.* at 376–77. The United States Supreme Court disagreed and set aside the Texas Supreme Court's denial of mandamus, holding that upon his demand, the state had a constitutional duty to make a diligent, good-faith effort to bring him to court for trial. *Id.*

at 383.

To further illustrate by contrast, in *Smith v. Gohmert*, we held that, because trial and appeal were available, "Smith ha[d] an adequate remedy at law; therefore he [was] not eligible for mandamus relief." *Smith v. Gohmert*, 962 S.W.2d 590, 593 (Tex. Crim. App. 1998). We explained that:

> In *Pope v. Ferguson* . . . the Texas Supreme Court held that a defendant seeking a dismissal of an indictment on speedy trial grounds was not eligible for mandamus relief, because such a defendant had an adequate remedy at law, to wit: the defendant could file a motion to set aside the indictment in the trial court . . . and if the trial court erroneously denied the motion, the defendant could appeal from any conviction that resulted from the continued prosecution.

*Id.* at 592 (discussing *Pope v. Ferguson*, 445 S.W.2d 950, 955–56 (Tex. 1969)). Noting that we had previously "'concurred . . . with the rationale of *Pope*'" and that we had reiterated that position in later cases,[17] we committed to adhering to that position. *Id.* at 592–93 (quoting *Thomas v. Stevenson*, 561 S.W.2d 845, 847 n.1 (Tex. Crim. App. 1978)). And, "[i]n any event, we continue[d] to believe that a defendant seeking to compel a dismissal of an indictment on speedy trial grounds has an adequate remedy at law[.]" *Id.* at 593.

Accordingly, if the trial court were indefinitely foregoing trial, and therefore indefinitely foreclosing the possibility of appellate review, Appellant could seek a writ of mandamus from the court of appeals to compel the trial court to make a diligent, good-faith effort to try him. If Appellant were convicted, he could thereafter raise, as error on appeal, the denial of his right to a speedy trial,

---

[17] *Ordunez v. Bean*, 579 S.W.2d 911, 913–14 (Tex. Crim. App. 1979) ("In the instant case, it is clear that petitioner has failed to meet either of the tests [for mandamus relief]. Appeal is available to the petitioner in the event of his conviction to test any asserted denial of his right to a speedy trial[.]"); *Hazen v. Pickett*, 581 S.W.2d 694, 695 (Tex. Crim. App. 1979) ("We now hold that since the petitioner has an adequate remedy by appeal if he is convicted he has not demonstrated that he is entitled to relief by writ of mandamus[.]").

preserved by a motion to dismiss.

The suitability of mandamus to getting a trial is in stark contrast to habeas, because pretrial habeas corpus does not seek to compel an action such as setting a case for trial. Habeas corpus disputes the lawfulness of confinement. *Ex parte McGowen*, 645 S.W.2d 286, 288 (Tex. Crim. App. 1983); TEX. CODE CRIM. PROC. Ann. art. 11.01. And pretrial habeas results in release; that writ "'is not appropriate when resolution of the question presented, even if resolved in favor of the applicant, would not result in immediate release.'" *Ex parte Hammons*, 631 S.W.3d 715, 716 (Tex. Crim. App. 2021) (quoting *Weise*, 55 S.W.3d at 619)); *see also Ex parte Ruby*, 403 S.W.2d 129, 130 (Tex. Crim. App. 1966).

The existence of remedies that are adequate to vindicate the speedy trial right—motion to dismiss and appeal in the normal course and mandamus when trial is indefinitely postponed—reinforces our conclusion that pretrial habeas does not vindicate the speedy trial right, and denying cognizability would not undermine the right. Therefore, the *Perry* rule does not apply to speedy trial claims. On the SPA's second ground for review, we hold that speedy trial claims are not cognizable in pretrial habeas corpus, even if the defendant wants a trial, yet trial is indefinitely postponed. The court of appeals erred in reaching the merits of Appellant's speedy trial issue, the SPA's second ground for review is sustained, and we reverse the judgment of the court of appeals.

Because we already determine that the court of appeals's judgment should be reversed, we need not consider the SPA's third ground for review, which essentially argues that the court of appeals erred on the merits of the speedy trial issue. We dismiss the SPA's third ground for review.

### V — Trial While Petition Was Pending

We now address the ground for review on this Court's own motion, asking whether the trial

court had jurisdiction to conduct Appellant's trial after the court of appeals delivered its opinion—but not the mandate—while the SPA's petition for discretionary review was pending at this Court. Both the SPA and Appellant agree that the trial court lacked jurisdiction due to the operation of Texas Rule of Appellate Procedure 25.2(g), which provides:

> (g) *Effect of Appeal.* Once the record has been filed in the appellate court, all further proceedings in the trial court—except as provided otherwise by law or by these rules—will be suspended until the trial court receives the appellate-court mandate.

Tex. R. App. P. 25.2(g).

If Appellant's appeal, and therefore the SPA's petition for discretionary review, stemmed from a judgment of the trial court in the underlying criminal case, we would agree. However, the appeal and the PDR do not arise from the underlying criminal case. The matter before us arises from a pretrial application for writ of habeas corpus.

In *Greenwell*, we explained that "[a] habeas corpus proceeding has always been regarded as separate from the criminal prosecution[.]" *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 649 (Tex. Crim. App. 2005). Accordingly, we endorsed as "amply supported by our caselaw" the view that:

> A habeas corpus action is, in theory, a different litigation than the criminal prosecution. . . . When habeas corpus is used as a vehicle for raising matters pretrial in a pending criminal prosecution, the difference between the pending prosecution and the habeas corpus proceeding is both more subtle and more significant. An order denying relief on the merits is a final judgment *in the habeas corpus proceeding.* Therefore, it is immediately appealable by the unsuccessful petitioner.

*Id.* 649–50 (quoting Dix and Dawson, Texas Practice: Criminal Practice And Procedure, 2nd ed., Vol. 43B, § 47.51, 219–220 (2001) (ellipsis inserted; emphasis in original)). We further noted that "there are no statutes that specifically grant a right to immediately appeal the denial of relief in a

pre-conviction habeas corpus proceeding." *Id.* at 650. Instead, "[t]he right of appeal occurs because the habeas proceeding is in fact considered a separate 'criminal action[.]'" *Id.* Because what authorizes the habeas appeal is the fact that the habeas proceeding is a separate action from trial, the fact that they are separate actions also dictates the pendency of a habeas appeal. *Id.* ("the denial of relief marks the end of the trial stage of that criminal action and the commencement of the timetable for appeal."). As a consequence of being the appeal of a separate action, in the absence of a stay,[18] the habeas appeal has no effect on the underlying criminal prosecution.

We further note that Appellant's argument relying on Rule 25.2(g) is similar to the argument raised in *Trimboli v. MacLean*, 735 S.W.2d 953 (Tex. App.—Fort Worth 1987, no pet.). There, the relator Trimboli had filed a pretrial application for writ of habeas corpus which was denied by the trial court. *Id.* at 954. Trimboli appealed the trial court's judgment, but at the same time he also sought a writ of prohibition from the court of appeals to prevent the trial from going forward during the pendency of the habeas appeal. *Id.* at 953–54. He asserted that he was entitled to an absolute stay of proceedings, and he urged that under the rules of appellate procedure, the filing of the record in the appeal of a criminal case suspends and arrests all further trial court proceedings in his case. *Id.*

---

[18] Our cases have referred to the use of stays in pretrial habeas proceedings, including to times when a stay was granted and when it was denied. *See, e.g.*, *Ward v. State*, 662 S.W.3d 415, 416 (Tex. Crim. App. 2020) (trial court denied both the applicant's writ and his request for a stay); *Ex parte Doster*, 303 S.W.3d 720, 722 (Tex. Crim. App. 2010) (referring to the applicant's request for a stay), *vacating Ex parte Doster*, 282 S.W.3d 110, 112 (Tex. App.—Waco 2009) (trial court denied the habeas application but agreed to a stay pending appeal); *Fant v. State*, 931 S.W.2d 299, 301 (Tex. Crim. App. 1996) (trial court denied the habeas application but agreed to a stay pending appeal).

References to stays in pretrial proceedings, and to a stay being granted, denied, or lifted, have also appeared in decisions of the courts of appeals. *See, e.g.*, *Ex parte Victorick*, 453 S.W.3d 5, 8 & n.1 (Tex. App.—Beaumont 2014, pet. ref'd) (trial court and court of appeals denied stay pending appeal); *Ex parte Hartfield*, 442 S.W.3d 805, 808 (Tex. App.—Corpus Christi–Edinburg 2014, no pet.) (court of appeals stayed the trial proceedings but later lifted the stay).

at 954 (citing former Tex. R. App. P. 40(b)(2)). The court of appeals disagreed because Trimboli appealed only the denial of his application for writ of habeas corpus; it was not an appeal of the cases in which he stood indicted. *Id.* The effect of the rule, automatically staying proceedings when the record is filed, was to stay only the proceedings in connection with the application for writ of habeas corpus. *Id.*

We reaffirm that a habeas proceeding is a separate proceeding from a criminal prosecution. A pending appeal in a habeas proceeding does not by itself bar a trial court from going forward on the underlying criminal prosecution; the appeal only bars the trial court from acting on the habeas proceeding. If a defendant wishes to prevent the trial court from proceeding to trial during pending pretrial habeas litigation, the defendant should seek a stay. Whether a criminal prosecution ought to be put on hold pending the outcome of a pretrial habeas action is a question that can be resolved in a court's decision whether to grant a stay.

Appellant did not obtain a stay of the criminal prosecution. The trial court had jurisdiction to proceed to trial. Accordingly, the answer to the Court's own ground for review is: "Yes."

## VI — Conclusion

We reaffirm that speedy trial claims are not cognizable in pretrial habeas corpus, and the rule of *Ex parte Perry* does not provide an exception if trial is indefinitely postponed. The remedy for a violation of a defendant's constitutional right to a speedy trial is dismissal and, if dismissal is wrongly denied, appellate review after trial and conviction. If trial and appellate review are indefinitely postponed, vindication of the speedy trial right should be had via petition for writ of mandamus, not by pretrial writ of habeas corpus. The judgment of the court of appeals is reversed.

Regarding Appellant's trial while the SPA's petition for discretionary review was pending

before this Court, the SPA's petition is part of independent litigation from the underlying criminal prosecution. Because Appellant did not obtain a stay of the underlying criminal prosecution, the trial court was within its authority to proceed to trial.

Delivered: June 21, 2023
Publish